IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALTAMESE YOUNG, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,        ) ) ) ) | |
| Plaintiff,        ) ) | Case No. 3:20-CV-00244-MAB |
| vs.        ) ) | |
| INTEGRITY HEALTHCARE COMMUNITIES, LLC, AND BELLEVILLE BEHAVIORAL HEALTH & NURSING CENTER, LLC,        ) ) ) ) ) ) | |
| Defendants.        ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Presently before the Court are motions, and responsive briefing, on the issue of jurisdiction in the present matter. For the reasons set forth below, Plaintiff's motion to allow expedited jurisdictional discovery and to stay the deadline to file a motion for remand is **GRANTED** (Doc. 12). Additionally, Defendants' motion to stay is **GRANTED in part** and **DENIED in part** (Doc. 19).

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Altamese Young filed her class action complaint in the 20th Judicial Circuit Court in St. Clair County, Illinois on October 23, 2019 (Doc. 1, p. 1). Plaintiff alleges that Defendants Integrity Healthcare Communities, LLC ("Integrity Healthcare") and Belleville Behavioral Health & Nursing Center, LLC ("Belleville Behavioral Health") (collectively "Defendants") violated the Illinois Biometric Information Privacy Act

("BIPA"), 740 ILCS 14/1, *et seq.*, by using a timekeeping system that allegedly collected, stored, and used the biometric identifiers and biometric information of Plaintiff and individuals employed by Defendants without first informing and obtaining those individuals' consent, as required by BIPA (Doc. 1, p. 2). Plaintiff alleges that Defendant Integrity Healthcare is a management company that provides services for Defendant Belleville Health and other "Integrity" long term care facilities in Illinois (Doc. 13, p. 1). Plaintiff herself is a former employee of Defendant Belleville Health and alleges that Defendants directed her and other employees to scan their hands in a biometric timekeeping system to clock in and out of their jobs (Doc. 13, p. 1). Plaintiff brings this suit on behalf of herself and a putative class of individuals who also scanned their hands in the biometric time clock system at one Integrity Healthcare facility in Illinois starting from around October 16, 2014 to the present (Doc. 1-1, p. 5).

Defendant Belleville Behavioral Health removed this case on March 4, 2020 pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, arguing that removal was proper under the Class Action Fairness Act ("CAFA") (Doc. 1, p. 5).[1] Under CAFA, United States district courts have original jurisdiction over any class action that (1) involves a class of 100 or more members; (2) where at least one member of the class is a citizen of a state different from any defendant; and (3) where the amount in controversy exceeds the sum or value

---

[1] Defendant argues that the notice of removal was timely filed, which Plaintiff does not oppose (Doc. 1, p. 4). Defendant Belleville Behavioral Health removed this case within thirty days of when it became apparent that the matter was removable. Defendant Belleville Behavioral Health asserts that it was first clear that the amount in controversy in this matter exceeds $5,000,000.00 in Plaintiff's Bill of Particulars, filed on February 3, 2020, which allowed for this case to be removed pursuant to the Class Action Fairness Act ("CAFA") (Doc. 1, p. 5)

of $5,000,000.00. *See* 28 U.S.C. § 1332(d)(4) (Doc. 1, p. 5). In its notice of removal, Defendant Belleville Behavioral Health argues that the aforementioned CAFA requirements are met here, as "approximately 20 putative class members (*i.e.,* past and present Belleville Behavioral Health employees who used the timekeeping system at issue under conditions Plaintiff alleges violate BIPA during the five years prior to the filing of the Complaint) are citizens of the State of Missouri" (Doc. 1, p. 6; Doc. 1-4). As Defendant Belleville argues that both Defendants are citizens of Illinois, these potential class members who are also citizens of Missouri are necessary for removal to federal court pursuant to CAFA's minimal diversity provision.

On April 1, 2020, Plaintiff filed a motion to allow expedited jurisdictional discovery and to stay the deadline to remand (Docs. 12, 13). In the supporting memorandum, Plaintiff argues that an exception to CAFA, called the "home state" or "local controversy" exception, likely applies to the present matter as more than two-thirds of the potential plaintiff class are citizens of Illinois (Doc. 13). *See also* 28 U.S.C. § 1332(d)(4)(A)(i)(I). Under the CAFA home state exception, the Court "shall decline to exercise jurisdiction" when Defendants and more than two-thirds of potential class members are citizens of "the State in which the action was originally filed," which, in this case, is Illinois (Doc. 13, pp. 2-3, citing to 28 U.S.C. § 1332(d)(4)(B)). Plaintiff argues that because Defendants possess records relevant to this exception, the Court should permit Plaintiff to conduct expedited jurisdictional discovery into the citizenship status of potential class members to determine whether the home state exception applies to the present matter (Doc. 13, p. 2). In support of this assertion, Plaintiff cites to the

Declaration of Defendants' Chief Financial Officer, Mr. Alan Irni, which Defendant Belleville Behavioral Health attached to its notice of removal (Doc. 1-4).

On May 29, 2020, Defendant Belleville Behavioral Health filed an amended notice of removal, expanding its basis for removal by citing to Section 301 of the Labor Management Relations Act ("LMRA") as an additional basis for the Court's jurisdiction (Doc. 24). *See* 29 U.S.C. §185. Defendant Belleville Behavioral Health argued that while Plaintiff herself is not a member of a union, the "majority of the employees…and the majority of those who used the timekeeping system at issue during the five years prior to the filing of Plaintiff's Complaint…are members of [a union]" (Doc. 24, p. 4). Defendant Belleville Behavioral Health argues that Plaintiff's class claim is subject to federal preemption under Section 301 of LMRA, which places this case firmly in federal court jurisdiction regardless of any potential issues with CAFA and the home state exception (Doc. 24, p. 4).

That same day, Defendants filed their response to Plaintiff's motion to allow expedited jurisdictional discovery, arguing that any potential issues with removal pursuant to CAFA and the home state exception are no longer relevant as this case was properly removed pursuant to the LMRA (Doc. 25, pp. 2-3). Defendants argue that precedent is explicit in that LMRA preempts CAFA, so further jurisdictional discovery is unnecessary. *Id.*

Plaintiff filed a reply brief on June 5, 2020, in which she argued that questions of jurisdiction and the Court's analysis of whether it has jurisdiction over the present matter pursuant to the LMRA relies on the named Plaintiff's claims and not the claims of

potential members of an uncertified class (Doc. 26, p. 1). Therefore, the Court should consider her request for expedited jurisdictional discovery as the LMRA does not apply to her claims.

While the parties briefed these issues related to federal subject matter jurisdiction, Defendants filed their own motion to stay all proceedings on May 11, 2020 (Doc. 19). In this motion, Defendants requested a full stay of the proceedings or, in the alternative, an extension of time in which to file their responsive pleadings. Defendants argued that an analogous state appellate court case was in the process of being decided that could shed light on the issues in the present matter. Plaintiff filed her response in opposition to this motion on May 26, 2020 (Doc. 23).

Both Plaintiff's motion to allow expedited jurisdictional discovery (Doc. 12) and Defendants' motion to stay all proceedings (Doc. 19), and their responses and replies, are currently before the Court.

## DISCUSSION

I. <u>Legal Standard</u>

Federal courts "possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (7th Cir. 2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). District courts have subject matter jurisdiction only in cases that raise a federal question and cases in which there is diversity of citizenship among the parties. *See* 28 U.S.C. §§ 1331–32. Removal of actions from state court to federal court is governed by 28 U.S.C. § 1441, which provides, essentially, that "[a] defendant may remove a case to federal court

only if the federal district court would have original subject matter jurisdiction over the action." *Disher v. Citigroup Global Mkts. Inc.*, 419 F.3d 649, 653 (7th Cir. 2005).

CAFA grants federal courts subject matter jurisdiction as to class actions, including putative class actions, in which claims are asserted on behalf of one hundred or more class members, at least one class member is a citizen of a state different from at least one defendant or, alternatively, at least one class member is a foreign state or a citizen or subject of a foreign state and at least one defendant is a citizen of a state (and vice versa), and the class claims exceed in the aggregate $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(1)(B), (d)(1)(D), (d)(2), (d)(5), (d)(6), (d)(7), (d)(8); *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010).

The core issue before the Court is whether the Court has subject matter jurisdiction over the present matter. Defendants argue that the Court does, first through CAFA and then the LMRA, and argues the LMRA preempts any issues that could be present with removal pursuant to CAFA. Plaintiff, on the other hand, believes that the LMRA does not apply and that the home state expectation of CAFA may apply, which, if it does, would require this Court to remand the present matter to state court. As Defendants are correct in that the LMRA would preempt any issues with removal pursuant to CAFA, the Court will begin its analysis there.

II.     Defendants' Amended Notice of Removal and Application of the LMRA

Defendants argue that pursuant to the amended notice of removal, filed on May 29, 2020, any issues related to the home state exception of CAFA are moot, as this Court firmly has subject matter jurisdiction over this case pursuant to the LMRA as it is a federal

labor law (Doc. 24). Plaintiff disagrees, arguing that the LMRA does not apply to the present matter as Plaintiff Altamese Young, the only named Plaintiff, was not a member of a union and jurisdictional analysis of this sort relies on the named plaintiff's claims and not the claims of potential members of an uncertified class (Doc. 26, p. 1). Plaintiff is correct.

In the latest amended notice of removal (Doc. 24), Defendant Belleville Behavioral Heath outlines that while the original notice of removal, which removed this case pursuant to CAFA, was appropriate, there is also a "separate and independent basis" for federal jurisdiction in Section 301 of the LMRA since some members of Plaintiff's potential class are members of a union. Section 301 preempts "claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.' " *Gray v. University of Chicago Medical Center, Inc.*, 2020 WL 1445608, at *2 (N.D. Ill. Mar. 25, 2020) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)). "If the resolution of a state law claim depends on the meaning of, or requires interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute." *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir. 1996). This is because there is a strong "interest[] in interpretive uniformity and predictability" of collective bargaining agreements. *Darty v. Columbia Rehabilitation and Nursing Center, LLC,* 468 F.Supp.3d 992, 994-995 (N.D.Ill. June 24, 2020), citing *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 211 (1985).

The Seventh Circuit has made it clear that BIPA claims are subject to complete federal preemption when the named plaintiffs are members of a union. *Miller v. Southwest Airlines Co.,* 926 F.3d 898, 903-904 (7th Cir. 2019). In *Miller,* plaintiffs, who were members of a union, brought a similar BIPA lawsuit to the present matter, alleging that their employer violated BIPA through the use of a "clock in/clock out" timekeeping system that scanned the plaintiffs' fingerprints and collected biometric information. The Seventh Circuit found that since plaintiffs were part of a union, there was complete federal preemption pursuant to the Railway Labor Act ("RLA"), which courts have found is "virtually identical" to Section 301 of the LMRA. *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 260 (1994).

Unlike *Miller,* however, Plaintiff Young is not a member of a union and, therefore, has not entered into a collective bargaining agreement with either Defendant, which would impact her claims before the Court. The Northern District of Illinois recently analyzed this exact issue in what appeared to be a case of first impression within the Seventh Circuit. *Darty*, 468 F. Supp. at 995. In *Darty,* the Court outlined that although this exact issue had not been addressed within the Seventh Circuit, other Circuits have held that only the claims of the named plaintiffs are relevant for purposes of determining whether complete preemption of putative class actions under Section 301 of the LMRA. *Darty,* 468 F.Supp. at 995, citing to *Pruell v. Caritas Christi,* 645 F.3d 81, 83-84 (1st Cir. 2011). The Northern District of Illinois highlighted that this rule was consistent with the usual rules governing class actions and that "to establish subject matter jurisdiction one looks only to the named plaintiffs and their claims [because] the class members other than the

named plaintiffs are merely potential parties until subject matter jurisdiction for the named plaintiffs is established and the district court has decided to certify a class." *Darty,* 468 F.Supp. at 996, citing *Pruell,* 645 F.3d at 83-84.

In her reply brief, Plaintiff highlights that Defendants have failed to cite to a single case in support of their argument that Plaintiff's claims are preempted by the LMRA based on the claims of a potential, uncertified class (Doc. 26, pp.2-3). Defendants openly admit Plaintiff is not a member of a union (See Doc. 24, p. 7)("Here, Plaintiff was not a union member"). It is well-settled that when *named* plaintiffs are part of a union, the LMRA preempts any state law claims and allows for the district court to easily establish that the case is correctly within the federal court's jurisdiction. *See Roberson v. Maestro Consulting Services LLC,* Case No. 20-CV-00895-NJR, 2020 WL 7342693 (S.D.Ill. Dec. 14, 2020) (finding that the Seventh Circuit's *Miller* decision clearly outlines that federal preemption by Section 301 of the LMRA is applicable to BIPA cases, thereby holding that there is subject matter jurisdiction over the claims of plaintiffs who are members of a union). *See also Fernandez v. Kerry, Inc.* No. 17-cv-08971, 2020 WL 7027587 (N.D.Ill Nov. 30, 2020) (holding that *Miller* is clear and requires the Court to find that Plaintiffs' BIPA claims are preempted by the LMRA as the plaintiffs were members of a union during the period of employment at issue in their lawsuit); *Gil v. True World Foods Chicago, LLC,* Case No. 20 C 2362, 2020 WL 7027727 (N.D.Ill. Nov. 30, 2020) (holding that the named Plaintiffs' BIPA claims were subject to preemption pursuant to Section 301 of the LMRA as they were members of a union and their claims relied on the interpretation of a collective bargaining agreement); *Williams v. Jackson Park SLF, LLC,* 2020 WL 5702294

(N.D.Ill. Sept. 24, 2020) (holding that because of precedent, including *Miller* and *Darty*, Plaintiff's BIPA claims were preempted by Section 301 of the LMRA because the plaintiff was a member of a union during his employment with the defendant).

The Court is persuaded by the Northern District's analysis in *Darty*. In the present matter, Plaintiff Altamese Young is not part of a union and while Defendants argue that the majority of the class members that will join Plaintiff are members of a union, this is purely speculative at this moment as Plaintiff has not yet identified the class members (*See* Doc. 24, p. 7, where Defendant outlines, "Plaintiff was not a Union member, but the majority of the putative class are Union members."). Defendants have not supported their argument with applicable case law and, as such, the Court finds that Plaintiff's claims are not preempted by Section 301 of the LMRA because Plaintiff was not a member of a union during her employment with Defendants.

### III.   Home State Exception Jurisdictional Discovery

Prior to Defendant Belleville Behavioral Health's amended notice of removal, which brought the issue of preemption under the LMRA before the Court, Plaintiff requested leave of this Court and the current schedule in order to conduct limited jurisdictional discovery to determine whether the home state exception to CAFA applied to the present matter (Docs. 12, 13). Defendants oppose this motion, arguing that Plaintiff's request is not justified for a variety of reasons. First, Defendants argue that discovery requests directed to Defendant Integrity were improper as Defendant Integrity did not employ Plaintiff or other potential class members, and therefore should not be subjected to jurisdictional discovery. Second, Defendant Belleville Behavioral Health

argues that discovery of this sort would be burdensome on Defendants and would not establish citizenship for purposes of the home state exception, and, lastly, that Plaintiff's request is based off of "mere speculation," and is, essentially, improper to grant (Doc. 25, p. 8). Defendants' arguments are not persuasive.

Defendant Belleville Behavioral Health originally removed this case under 28 U.S.C. § 1332(d), alleging that this Court has subject matter jurisdiction under CAFA. "[T]he party asserting federal jurisdiction under CAFA must establish that the requirements of § 1332(d) are satisfied." *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017). "To meet this burden, a defendant seeking to remove to federal court must file in the district court a notice of removal 'containing a short and plain statement of the grounds for removal.' " *Id.* (quoting 28 U.S.C. § 1446(a)). "A federal court's jurisdiction under CAFA is determined at the time of removal." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 515 (7th Cir. 2011) (citing *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010)). Under CAFA, federal courts have jurisdiction over cases in which (1) the class consists of 100 or more members, *see* 28 U.S.C. § 1332(d)(5)(B); (2) any plaintiff is a citizen of a state different from that of any defendant, 28 U.S.C. § 1332(d)(2)(A); and (3) the aggregate amount of the plaintiffs' claims exceeds $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(6).

In its original notice of removal, Defendant Belleville Behavioral Health established the CAFA requirements for removal. Minimal diversity exists between the parties because Plaintiff is a citizen of Illinois (Doc. 1-1), but approximately 20 putative class members are citizens of Missouri (Doc. 1, p. 5). *See also* 28 U.S.C.§ 1332(d)(2)(A),

requiring that any member of the *putative* class be a citizen of a different state than any defendant. Defendant Belleville Behavioral Health is a limited liability company organized and existing under the laws of Illinois with its principal place of business also in Illinois (Doc. 1, p. 6). Similarly, Defendant Integrity Healthcare is also a limited liability company organized and existing under the laws of Illinois with its principal place of business also in the State of Illinois (*Id.*).[2] Additionally, Defendant Belleville Behavioral Health estimated that in the five years preceding the filing of Plaintiff's complaint, approximately 643 employees used the timekeeping system and could be members of this class action, well over the 100 member statutory requirement (Doc. 1, p. 6). Lastly, based on the parties' bills of particulars, the parties appropriately alleged that the amount in controversy exceeds $5,000,000 (Doc. 1, pp. 4-5; Docs. 1-2, 1-3).[3]

While the Court is satisfied that the elements of CAFA are met, it is still unclear as to whether the home state exception applies. The home state exception to CAFA details that the district court *shall* decline to exercise its jurisdiction over a matter if "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens

---

[2] CAFA states that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Although an LLC's citizenship is the citizenship of its members for purposes of diversity jurisdiction, *Cosgrove v. Bartolotta,* 150 F.3d 729, 731 (7th Cir.1998), this rule doesn't apply to jurisdiction under CAFA. "As part of CAFA, Congress chose to modify existing case law concerning the citizenship of unincorporated associations." *Bond v. Veolia Water Indianapolis, LLC,* 571 F.Supp.2d 905, 909 (S.D.Ind. 2008) (*citing* 28 U.S.C. § 1332(d)(10)). *Kurth v. Arcelormittal USA, Inc.,* No. 2:09-CV-108RM, 2009 WL 3346588, at *7 (N.D. Ind. Oct. 14, 2009)

[3] Defendant Belleville Behavioral Health argues, and Plaintiff does not contest, that the parties became aware that the amount in controversy exceeded the CAFA requirement when they filed their bills of particulars, which occurred on or around February 3, 2020 (Doc. 1, pp. 4-5). Plaintiff does not assert that this case was untimely removed.

of the State in which the action was originally filed," and at least one defendant is a citizen of that same state. *Id.* § 1332(d)(4).[4] The home state exception is "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 682 (7th Cir. 2006).

At first blush, it appears this case would be a prime example of the home state exception. Defendant Belleville Behavioral Health established in its notice of removal that both Defendants are citizens of Illinois. In addition, Defendant Belleville Behavioral Health submitted a declaration from Defendants' Chief Financial Officer, in which he stated that out of the 623 potential class of plaintiffs, only 20 are Missouri residents, an assertion he based off of his "review of personnel data maintained by Belleville Behavioral Health" (Doc. 1-4., p. 3). Mr. Irni further outlines that as part of his position, he is "familiar with and ha[s] access to personnel information regarding Belleville Behavioral Health and its current and former employees, including the type of timekeeping system such employees used"(Doc. 1-4, p. 2). This Declaration demonstrates that Defendants are capable of determining the citizenship of the potential class from

---

[4] Courts have previously examined the home state exception *sua sponte*, which is not the present issue before the Court; however, that inquiry indicates to the undersigned the importance of the balance of this exception. *See Int'l College of Surgeons v. City of Chi.*, 153 F.3d 356, 360 (7th Cir.1998) (district court has authority to sua sponte  consider whether to abstain under judicially-created abstention doctrines); *See also* Benson v. Fannie May Confections Brands, Inc., No. 17 C 3519, 2018 WL 1087639, at *2 (N.D. Ill. Feb. 28, 2018).

Defendant Belleville Behavioral Health's personnel records and, it appears, that it is quite possible the majority of the class could very well be citizens of Illinois.[5] The Senate Judiciary Committee Report's description of the home state exception seems to apply here, in that the home state exception is meant "to respond to concerns that class actions with a truly local focus should not be moved to federal court under [CAFA] because state courts have a strong interest in adjudicating such disputes." *See Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1119 (9th Cir. 2015). At the same time, this is a narrow exception that was "carefully drafted to ensure that it does not become a jurisdictional loophole." *Id.*

While it appears the home state exception may be in play here, the party invoking it must submit evidence as to the citizenship of the putative class members. *See Myrick v. WellPoint, Inc.*, 764 F.3d 662, 665 (7th Cir. 2014) (noting "plaintiffs needed to produce some evidence that would allow the court to determine the class members' citizenships on the date the case was removed").[6] Accordingly, as Plaintiff has that burden, she has requested the Court grant her leave to conduct expedited jurisdictional discovery. Whether to allow jurisdictional discovery is within the discretion of the Court. *See Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159 (7th Cir. 2000). In deciding whether to allow

---

[5] Plaintiff argues that it is reasonable to conclude that the vast majority of the proposed class members are Illinois citizens, given where Defendants' facility is located within Illinois, which is 16.8 miles to St. Louis, Missouri, but not within a reasonable commuting distance to another state (Doc. 12, p. 4).

[6] Generally, the Court is entitled to consider any "evidence [that] sheds light on the situation which existed when the case was removed" to ascertain whether there is federal subject matter jurisdiction. *Harmon v. OKI Sys.*, 115 F.3d 477, 479-80 (7th Cir. 1997) (considering post-removal interrogatories to evaluate whether federal subject matter jurisdiction existed when a case was removed). *See also Cassens v. Cassens*, 430 F. Supp. 2d 830, 834 n.2 (S.D. Ill. 2006) ("[A] court is entitled to consider all facts that shed light on the existence of subject matter jurisdiction.").

jurisdictional discovery as to the home state exception, courts in other districts have looked to two factors: (1) whether the plaintiff has made a sufficient showing that the home state exception likely applies, and (2) whether the requested class information is "readily available" to the defendant (Doc. 12, p. 3, citing to *Baker v. PDC Energy, Inc.,* No. 14-CV-02537-RM-MJW, 2014 WL 6910207, at *1 (D. Colo. Dec. 9, 2014)). In this district, parties have been allowed to conduct jurisdictional discovery for the purpose of determining whether the home state exception applies. *See Day v. Southern Illinois Hardware, LLC,* Case No. 3:20-cv-0008-DWD (S.D.Ill. Jan. 3, 2020) (Doc. 17). Additionally, the Seventh Circuit has previously outlined the parameters of this exact analysis, detailing that in assessing the issue of citizenship for purposes of determining whether the CAFA home state exception applies, the court may not draw conclusions about the citizenship of class members on things like their phone numbers and mailing addresses. *In re Spring Nextel Corp,* 593 F.3d 669, 673 (7th Cir. 2010). The totality of this case law persuades this Court to grant Plaintiff's motion.

Defendants argue that Plaintiff is relying on "guesswork" to plead the home state exception and that the type of discovery she wishes to engage in (*e.g.,* Accurint searches based on potential class members' social security numbers) would not establish citizenship, but these arguments are unavailing (Doc. 25, pp. 6-8). If Defendant Belleville Behavioral Health contends that its Chief Financial Officer can state unequivocally, in a Declaration submitted to this Court, that a certain number of putative class members are citizens of Missouri for purposes of removal, it follows that Defendant Belleville Behavioral Health should also be able to determine, out of approximately 623 individuals

potentially impacted by this class action, who is a citizen of Illinois based on the same records.[7]

Accordingly, Plaintiff's motion to allow expedited jurisdictional discovery to determine whether the CAFA home state exception applies to the present matter is GRANTED (Doc. 12). Plaintiff's deadline to file a motion to remand is STAYED pending jurisdictional discovery.

IV. Defendants' Motion to Stay all Proceedings

In addition to the motions and briefing filed by the parties on the issue of subject matter jurisdiction before the Court, Defendants Belleville Behavioral Health and Integrity Healthcare filed a motion to stay all proceedings or, in the alternative, for an extension of time in which to file their responsive pleadings until the Illinois Appellate Court for the First Judicial District issues a decision in *McDonald v. Symphony Bronzewill Park, LLC* (Doc. 19). Defendants argue this case will help simplify the issues in the present matter (*Id.*).

Plaintiff opposes the motion, arguing that a stay of this sort is premature as there are jurisdictional issues that still need to be determined before the Court through jurisdictional discovery, and a stay would stall that discovery (Doc. 23). Plaintiff also argues that Defendants have not satisfied the burden required to grant the stay (*i.e.*, "a

---

[7] Plaintiff's reply brief outlines a variety of ways it may seek to conduct expedited jurisdictional discovery if Defendants are unable to do so based on their own internal records (See Doc. 26, pp. 3-4). The Court plans to set this matter for a status conference to discuss the parameters of the expedited discovery with the parties.

clear case of hardship or inequity") (Doc. 23, p. 5). Lastly, Plaintiff argues that *McDonald* is not an appropriate ground for a stay, as the issue central to *McDonald* has been addressed by Illinois state trial courts and two federal district courts already (Doc. 23, p. 3).

The Court is granting Plaintiff's motion for jurisdictional discovery because the undersigned must first ensure the Court has subject matter jurisdiction over the present matter. As such, the Court GRANTS in part Defendants' motion. The deadline for Defendants' responsive pleading to Plaintiff's complaint is STAYED for the duration of the jurisdictional discovery. Should this case remain in this District following the parties' jurisdictional discovery and Plaintiff's potential motion to remand, Defendants' responsive pleading shall be due 21 days following the Court's order on any motion to remand and responsive briefing from Defendants.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Plaintiff's motion for expedited jurisdictional discovery (Doc. 12). Plaintiff's deadline to file a motion to remand is hereby **STAYED** pending the outcome of the expedited jurisdictional discovery. In addition, Defendants' motion to stay is **GRANTED in part** (Doc. 19). Should this matter remain in this District, Defendants' responsive pleadings shall be due 21 days following an Order on any motions filed in response to the parties' jurisdictional discovery. The Court will set this matter for a status conference by way of separate notice to discuss the parameters of and timeline for jurisdictional discovery. The Court's

separate notice will provide the parties some guidance and a timeline for meeting and conferring in an effort to develop a joint discovery plan for submission to the Court.

    **IT IS SO ORDERED.**

    **DATED: January 15, 2021**

                                         <u>s/ Mark A. Beatty</u>
                                         **MARK A. BEATTY**
                                         **United States Magistrate Judge**